436 So.2d 595 (1983)
Vanessa CONDALL
v.
AVONDALE SHIPYARDS, INC.
No. CA 0723.
Court of Appeal of Louisiana, Fourth Circuit.
June 28, 1983.
*596 Mr. Delbert G. Talley, Windhorst, Pastorek & Gaudry, Gretna, for defendant-appellant.
James H. Minge, New Orleans, for plaintiff-appellee.
Before SCHOTT, AUGUSTINE, and CIACCIO, JJ.
SCHOTT, Judge.
In this Workers' Compensation case there was a consent judgment declaring plaintiff temporarily totally disabled and awarding her benefits as provided for in LSA-R.S. 23:1221(3). In a separate judgment, which is the subject of this appeal by defendant, the trial judge awarded plaintiff $250 as a civil penalty and $500 for attorney fees because of defendant's failure to furnish plaintiff with medical reports; $29.04 for unpaid medical benefits and $1000 for attorney fees as a penalty for its failure to pay medical benefits; and $5000 for attorney fees and 12% penalties on unpaid compensation for defendant's failure to pay compensation benefits timely. Issues are whether plaintiff is entitled to penalties and attorney fees and whether the attorney fees are excessive.
Plaintiff was injured in January, 1981, and was treated by Dr. Charles Johnson. He performed surgery on her knee on October 23, 1981, and on May 18, 1982, he issued a slip certifying that she "may return to work." Plaintiff returned to work on May 19, but defendant discharged her for "personal medical reasons." Compensation benefits were paid through May 22, 1982 when they were terminated. On June 1 plaintiff employed counsel who immediately called upon defendant to furnish him with medical reports on plaintiff. Plaintiff was referred to Dr. Bernard Manale, and on June 16 her counsel sent defendant a copy of Manale's report and bill with a request that defendant pay it. In July plaintiff's counsel sent additional medical reports from Dr. Manale and repeated his request for copies of defendant's reports and payment of the medical expenses incurred by plaintiff. He repeated these requests during July and August and on August 12 filed the instant suit. Defendant was served with the petition on August 19. On August 23 defendant sent plaintiff's counsel a check for $1449.03 to cover workers' compensation benefits for the period of June 8, 1982 to August 24, 1982, and on September 10 defendant sent plaintiff a check for medical expenses of $345 for Dr. Manale and $33.96 for prescription drugs. However, defendant never paid a $29.04 bill for prescription drugs and did not furnish plaintiff's counsel with copies of the medical reports until the day of trial on November 10, 1982.
Plaintiff's claim for penalties and attorney fees for defendant's failure to furnish the medical reports is based on R.S. 23:1125 which requires an employer to furnish to its employee or his representative copies of *597 medical reports and provides in pertinent part:
"Any employer who without just cause fails to furnish such report to an employee so requesting same within the thirty day period provided [by the statute] shall be liable to the employee for civil penalty in the amount of $250.00 plus a reasonable attorney's fee for the collection of such penalty."
The trial court's conclusion that failure to furnish medical reports was without just cause is supported by the record which contains no explanation by defendant for its conduct. Plaintiff was clearly entitled to the civil penalty and nothing in the record suggests that the $500 awarded for the attorney fee was not "reasonable" considering the repeated requests by plaintiff's counsel for the reports and the stubborn refusal of defendant to furnish them even after this suit was filed.
As to plaintiff's entitlement to penalties and attorney fees for defendant's failure to pay compensation benefits and the medical expenses, R.S. 23:1201.2 makes the employer liable when the failure to make payments or the discontinuation of payments is found to be arbitrary, capricious or without probable cause.
In his reasons for judgment the trial judge noted that plaintiff had reported for work on May 19 but defendant terminated her for medical reasons, thereby admitting its obligation to continue with compensation benefits. In effect, the trial court's conclusion was based on the failure to pay benefits for the period beginning on May 23. In this court, defendant argues that it was entitled to rely on Dr. Johnson's back-to-work slip of May 18, so that its discontinuation of benefits was justified. However, this argument ignores defendant's overall conduct in the handling of plaintiff's case until the suit was filed in August.
Perhaps by June 17 and surely by July 15 defendant had a copy of Dr. Manale's report of June 11 stating that both of plaintiff's knees had been fitted with braces in the hope of improving her condition and that further surgery was a distinct possibility. Furthermore, Dr. Johnson reported to defendant on July 15 that plaintiff had a permanent partial physical impairment of 15% to her right lower extremity. Defendant's workers' compensation specialist admitted that she changed her mind about plaintiff's entitlement to benefits at the end of June and yet defendant did not resume payments at this time. Only after being served with plaintiff's petition did defendant pay the benefits for the period from June 8 to August 24, 1982. Thus, we need not labor over defendant's conduct from May 23. The record is clear that a discontinuation of payments occurred, and at some point long before suit was filed payments should have been resumed. It is well established that if an employee has but a partial disability the employer is not justified in terminating all compensation and if compensation even for partial disability is arbitrarily withheld penalties and attorney fees may be assessed. Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977). In the present case defendant gave no explanation for paying plaintiff nothing in the face of the medical information in its possession. The trial judge correctly concluded that its conduct was arbitrary, capricious, or without probable cause.
Likewise, the record supports the trial judge's conclusion that defendant was arbitrary, capricious, or without probable cause in failing to pay the medical expenses of plaintiff. While in his reasons for judgment the trial judge seems to base the additional award of $1000 attorney fees because defendant never paid the $29.04, the record shows that defendant had received a barrage of requests for payment of Dr. Manale's bills of $315 beginning in June, 1982, and yet it did not pay these bills until September 10, almost three weeks after being served with plaintiff's petition. R.S. 23:1201.2 authorizes the imposition of attorney fees for failure to pay medical expenses. Bryant v. New Orleans Public Serv., Inc., 367 So.2d 100 (La.App. 4th Cir. 1979) writ den. 369 So.2d 457.
*598 Having concluded that plaintiff is entitled to penalties and attorney fees, we turn to the question of whether the amounts of $5000 and $1000 awarded by the trial court are excessive. In his reasons for judgment the trial judge made the following findings and conclusions:
"On November 18, 1981, Defendant was advised in writing of Plaintiff's orthroscopic surgery (D-14). On February 24, 1982, Defendant was again advised in writing by Dr. Johnson that Plaintiff was totally disabled for at least six more months (D-8). (Emphasis added)
Approximately three months later, on May 18, 1982, Plaintiff was issued an Unrestricted `Return to Work' note (D-2). Following the physicians' instructions, she reported for duty on May 19, 1982, and was callously and cruelly, summarily and wrongfully fired by the Defendant who claimed that she was unable to perform the duties of her employment because of the medical injuries which she received while working (P-1). The Defendant knew or should have known from the previous medical records in their possession that Plaintiff had not fully recovered as six months had not elapsed (D-8). Or if they accepted their physician's note that she was capable of working, they should have given her an opportunity to perform her duties. Defendant Avondale intentionally elected to terminate Plaintiff's employment, wages and workmen's compensation benefits thereby depriving Plaintiff of any income or medical benefits."
Defendant takes sharp issue with the trial judge's characterization of its firing of plaintiff as "callously and cruelly, summarily and wrongfully." To a certain extent defendant's argument has merit. In the first place, Dr. Johnson's February 24 report states that plaintiff was expected to be disabled "for approximately six months from the time of her surgery." (Emphasis supplied). The surgery had taken place on October 23, 1981 so that there was nothing obviously inconsistent between Dr. Johnson's February 24 report and his May 18 back-to-work slip. Thus, the trial judge's conclusion that defendant should have known on May 18 "that plaintiff had not fully recovered as six months had not elapsed" is unwarranted.
Furthermore, the trial judge concluded that plaintiff was "callously and cruelly, summarily and wrongfully fired by defendant" on May 19 because plaintiff returned to work in compliance with the back to work slip, and, yet, she was not given a chance to try to work. The evidence to explain the circumstances of her discharge was sparse. It consists only of plaintiff's testimony and the naked discharge slip. She testified that when she returned she was sent to the first aid station,
".... and I seen Dr. Maybe, and he checked my knee over and I told him I was still having problems with the knee and before I could, they could put me back in the yard they took my file and sent me over to the personnel officeand I can't remember the man's name, but they told me I was to be terminated."
On cross examination plaintiff further stated:
".... He told me he wasn't going to put me back in the yard, because of my knee. He said they were going to terminate me, and he wouldn't want to go out back in the yard and hurt my knee anymore than what I already hurt it. So, he just terminated me."
We are not necessarily persuaded by this evidence that plaintiff was callously, cruelly or wrongfully fired as was the trial judge. With plaintiff still having problems defendant acted properly in referring her to the first aid station and may have been quite prudent in deciding that she should not go back to work for her own well being. Of course, as the trial court found, defendant should have reinstated her on compensation, and its failure to do so subjects it to statutory penalties and attorney fees. But the evidence does not support the conclusion that defendant's decision to terminate plaintiff was, in itself, sinister or cruel.
In determining the reasonableness of attorney fees the trial court has much *599 discretion. Moreau v. Houston General Ins. Co., 386 So.2d 151 (La.App. 3rd Cir.1980); Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979); Wactor v. Gurtler Hebert Const. Co., 343 So.2d 383 (La.App. 4th Cir.1977) writs den. 345 So.2d 59. In each of these cases an award of $5000 for attorney fees was not considered abusive of the trial court's discretion. In the exercise of discretion in this case the trial court based the award of $6000 at least in part on the erroneous conclusion that defendant should have known that plaintiff was still totally disabled on May 18 (not yet six months after February 24) and the unsupported conclusion that plaintiff's discharge was not done in good faith. While it may be argued that this necessarily supports some reduction in the award, we are not persuaded that these errors mandate a significant reduction when they are viewed in the totality of circumstances. We may agree that the award is high, but we are not convinced that it is beyond the range of discretion vested in the trial court.
Accordingly, the judgment is affirmed.
AFFIRMED.