839 So.2d 472 (2003)
Gerryleigh K. GALEANO,
v.
TACO BELL CORPORATION.
No. 02-CA-904.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
Rehearing Denied March 31, 2003.
*474 Philip J. Borne, H. Carter Marshall, Christovich & Kearney, L.L.P., New Orleans, LA, for Appellant, Taco Bell Corporation.
Anthony J. Milazzo, Jr., Uddo, Milazzo, & Beatmann, Metairie, LA, For Appellee, Gerryleigh Galeano.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
In this workers' compensation suit, the employer appeals the judgment finding that the employee met her burden of proving a work-related accident and that the employee had not made fraudulent statements in order to obtain benefits. The employee appeals the finding that she is not entitled to compensation benefits after July 29, 2000. For the following reasons, we affirm the workers' compensation judge's ruling in part and reverse in part.
Facts
Gerryleigh K. Galeano ("Galeano") was employed by Taco Bell Corporation("Taco Bell") as Assistant General Manager for its Manhattan Boulevard store in Harvey, Louisiana. On January 6, 2000, Galeano injured her back as she attempted to retrieve a 40-gallon box of drink syrup, which was stacked atop other large boxes.
The next day, Galeano sought medical treatment from her family physician, Dr. Dana Fouchi, who prescribed medication, instructed her not to return to work for two weeks, and encouraged her to see a "specialist." On January 9, 2000, Galeano visited the emergency room at Kenner Regional Medical Center, where she received pain medication intravenously. On January 11, 2000, she followed up with Dr. Fouchi, who again evaluated her condition and prescribed medication. On January 12, 2000, Galeano visited the emergency room at East Jefferson General Hospital complaining of lower back pain. On that day, the emergency room physician prescribed medication and recommended follow-up with an orthopedist.
Against Dr. Fouchi's recommendation, Galeano returned to work on January 13, 2000, one week after her accident. She stopped working, however, after her third day back at work because her left leg "kept going numb."
On January 20, 2000, Galeano sought treatment from Dr. Thomas Hawley at the Occupational Medicine Clinic at East Jefferson General Hospital. On that date, Galeano's neurological status and lumbosacral x-rays were within normal limits. Dr. Hawley prescribed medication as well as physical therapy. He also recommended "light duty." After receiving physical therapy, Galeano's condition improved and Dr. Hawley released her to return to work on February 7, 2000.
*475 On or about March 1, 2000, however, Dr. Hawley again restricted her to "light duty." On March 6, 2000, Dr. Hawley declared Galeano "disabled" until she was evaluated by Dr. Gordon Nutik. Dr. Hawley discharged her on that date, also.
On March 8, 2000, Galeano saw Dr. Nutik, who recommended an MRI, further physical therapy, and did not recommend return to work on that date. On March 20, 2000, Galeano underwent an MRI of the spine. On March 28, 2000, Dr. Nutik evaluated the scans and observed a central and left-sided disc herniation at the L4-5 level. Over the next four months, Dr. Nutik recommended physical therapy and sacroiliac joint injections, which were both refused by Galeano. He also felt that Galeano was able to perform sedentary work for up to six hours a day but he did not recommend that she return to her managerial position at Taco Bell. Because of her ongoing lower back complaints, Dr. Nutik referred her to a neurosurgeon.
On April 28, 2000, Galeano sought treatment from Dr. Courtney Russo, an orthopedist. Dr. Russo, who remains her treating orthopedist, has not released Galeano to return to work.
On May 12, 2000, Galeano sought treatment from Dr. Lucian Miranne, a neurosurgeon, who recommended "SI joint" injections. Interestingly, on that first visit, Dr. Miranne felt that Galeano was "capable of sedentary light type work with alternating sitting/standing."
On July 21, 2000, Dr. Russo requested another MRI of Galeano's spine. The radiologist that read Galeano's August 10, 2000 MRI noted that the "central disc herniation and/or disc bulge, [is] less pronounced as compared to the study performed previously on 03 March 2000."
On July 29, 2000, at defendant's request, an investigator for Omega Insurance Services videotaped Galeano in the park near her apartment. The videotape reflects claimant bending at the waist to retrieve items from the ground, squatting, stretching and jogging/walking for a thirty-minute period. Our review indicates that she did not exhibit discomfort while performing these tasks.
On August 30, 2000, Dr. Miranne examined Galeano's second MRI and agreed that it showed "diminished protrusion of the L4-5 disc." He recommended, due to claimant's allegations of pain, epidural steroid injections. He discharged her from his care on November 20, 2000.
On March 16, 2001, Galeano submitted to an independent medical examination by neurologist, Dr. Robert Applebaum, who recommended a myelogram and CT scan of the lumbar and thoracic regions. Based on her complaints of back pain, he did not recommend return to work at that time. On June 5, 2001, Galeano consulted Dr. Antonio Prats, a neurosurgeon in Florida, who recommended repeating the lumbar spine MRI and a lumbar microdiscectomy.
On September 27, 2001, an investigator for Omega Insurance Services videotaped Galeano working in her yard in the early morning hours. The videotape shows Galeano, without apparent physical difficulty, removing several large bags of soil and fertilizer from her car's trunk. She also was seen bending completely at the waist for extended periods of time while spreading the fertilizer around her yard and while applying the weed killer to areas around her yard. She also lifted at least four potted plants to waist level from the ground and carried these pots several feet before bending again to place them on the ground. Further, throughout this tape, she was squatting to ground level then standing upright without apparent difficulty.
*476 Further, Taco Bell paid weekly indemnity benefits to Galeano from the date of her injury until June 2, 2000 and from June 16, 2000 until May 23, 2001. Finally, except for authorizing a third MRI, reimbursing her for the initial evaluation by Dr. Prats, and authorizing continuing epidural steroid injections for her, Taco Bell has paid medical expenses for Galeano since the date of her accident.
Procedural History
On June 25, 2001, Galeano filed a disputed claim for workers' compensation alleging that Taco Bell refused to pay compensation benefits for June 3, 2000 through June 15, 2000; failed to promptly pay for treatment by its physician, Dr. Robert Applebaum, prompting cancellation by Dr. Applebaum of two appointments; interfered with treatment by Dr. Miranne; and failed to reimburse Galeano for her initial evaluation by Dr. Prats. Galeano subsequently filed two amended and supplemental disputed claims for compensation changing her choice of neurosurgeon to Dr. Prats and alleging Taco Bell's actions were arbitrary and capricious.
Taco Bell timely filed an Answer and Supplemental Answers to these claims. Further, based on its video surveillance of Galeano, Taco Bell filed a reconventional demand on January 14, 2002, alleging that Galeano willfully made false statements and misrepresentations to obtain workers' compensation benefits; requested a forfeiture of workers' compensation benefits under La. R.S. 23:1208; and restitution of benefits paid.
On February 4, 2002, trial was held and the matter was taken under advisement. On March 14, 2002, the workers' compensation judge ruled that Galeano was accidentally injured in the course and scope of her employment on January 6, 2000; that Galeano was not entitled to payment of weekly indemnity disability benefits after July 29, 2000; that Galeano was entitled to payment of all medical expenses, medication expenses and transportation expenses for said injury; and that defendant was arbitrary and capricious in its refusal to pay medical expenses. Further, defendant was assessed a penalty of $2000.00, attorney fees of $3000.00, and ordered to pay all costs.
Thereafter, Galeano filed a Motion to Supplement Judgment and Motion to issue Reasons for Judgment. On April 23, 2002, the workers' compensation judge issued written Reasons for Judgment which stated that all medical and medication expenses herein are reasonable, necessary and compensable; defendant has been arbitrary and capricious in its refusal to pay claimant's medical expenses, which warrants the payment of penalties and attorney fees; and defendant's allegations of misrepresentations do not meet the criteria required by the La. R.S. 23:1208.
On April 12, 2002, Taco Bell suspensively appealed. On May 13, 2002, Galeano filed a devolutive appeal.
On appeal, Taco Bell assigns four errors: the workers' compensation judge erred in failing to find that Galeano committed fraud by willfully misrepresenting her medical condition and her ability to work for the purpose of obtaining workers' compensation benefits; the workers' compensation judge erred in failing to declare appellee's entire claim for workers' compensation benefits forfeited under La. R.S. 23:1208; the workers' compensation judge erred in finding appellee's indemnity benefits were terminated as of May 24, 2000, and that appellant was not entitled to a credit under La. R.S. 23:1206; and the workers' compensation judge erred in awarding penalties and attorney fees.
On appeal, Galeano also assigns four errors: the decision by Judge Steib denying *477 weekly indemnity disability benefits since July 29, 2000 is not supported by the law or evidence; the decision by Judge Steib refusing to award Galeano her weekly indemnity disability benefits for the period of June 3, 2000 through June 15, 2000 is not supported by the law or the evidence; the decision by Judge Steib should specifically award Galeano the medical treatment to which she is entitled, including, but not limited to, the MRI that was recommended by Dr. Russo and Dr. Prats, the epidural steroid injections recommended by Dr. Russo, and naming Dr. Prats as her neurosurgeon; and the claimant should be awarded sanctions and attorney fees for each violation by the defendant.
Analysis

Defendant's Assignments of Error
Taco Bell argues, as its first and second assignments of error, that the workers' compensation judge erred in failing to find that Galeano committed fraud by willfully misrepresenting her medical condition and her ability to work for the purpose of obtaining workers' compensation benefits and erred in failing to declare appellee's entire claim for workers' compensation benefits forfeited under La. R.S. 23:1208. Defendant specifically contends that the workers' compensation judge erred in failing to find Galeano committed fraud by willfully misrepresenting her medical condition and ability to work based on the evidence presented at trial including the surveillance videotapes and medical records for previous back injuries.
La. R.S. 23:1208 states in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

* * *
In Parker v. ADM Milling Co., 01-649 (La.App. 5 Cir.11/27/01), 804 So.2d 120, 126, this Court stated:
The only requirements for forfeiture under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Because § 1208 is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions. False statements that are inadvertent or inconsequential will not result in forfeiture.
Further, whether an employee has forfeited her right to workers' compensation benefits is a factual question that should not be disturbed on appeal absent manifest error. Parker, supra.
In this case, Galeano explained her omission regarding previous injuries. She stated that she did not consider her previous accidents significant or related to the pain from her work-related injury. Further, regarding the surveillance videotapes that show Galeano moving without apparent difficulty, she explained that she did feel pain when she performed certain activities. Moreover, she also indicated that the few activities that were shown on the videotape were much less strenuous than *478 the job duties of an assistant manager at Taco Bell. Clearly, the workers' compensation judge concluded that Galeano's omissions were not willful misrepresentations designed to secure workers' compensation payments and, thus, forfeiture of benefits was not required. We find no manifest error in the workers' compensation judge's conclusion.
Third, Taco Bell argues that the workers' compensation judge erred in finding appellee's indemnity benefits were terminated as of May 24, 2000, and that appellant was not entitled to a credit under La. R.S. 23:1206. We agree. First, we note a clerical error in the written reasons for judgment. In the first paragraph, the workers' compensation judge states correctly that the defendant paid compensation benefits to Galeano until May 24, 2001. The record supports that statement. That same document, however, also mistakenly states: "Claimant was paid weekly indemnity benefits through May 24, 2000...." [Emphasis added.]
In sum, Taco Bell paid benefits through May 24, 2001. The workers' compensation judge, however, clearly ruled that Galeano was not entitled to weekly indemnity benefits after July 29, 2000. Thus, we agree that Taco Bell is entitled to a credit under La. R.S. 23:1206 for overpayment of benefits from July 29, 2000 until May 24, 2001.
Lastly, Taco Bell argues that the workers' compensation judge erred in awarding penalties and attorney fees. We disagree. La. R.S. 23:1201(E), which sets out the penalty provision in question, provides for a twelve percent (12%) penalty on any compensation or medical benefit that the employer/insurer fails to timely pay, unless the employee's right to such compensation or benefit has been "reasonably controverted." La. R.S. 23:1201.2 subjects the employer or insurer to the imposition of reasonable attorney fees when the failure to pay any worker's compensation claim within sixty (60) days of notice is found to be arbitrary, capricious or without probable cause.
In Louisiana, an employer or insurer may avoid the imposition of penalties and attorney fees if it relies upon "competent medical advice" in the decision not to guarantee the payment of a recommended medical treatment. Landry v. Central Industries, Inc., 592 So.2d 478 (La.App. 3 Cir.1991), writ denied, 593 So.2d 381 (La. 1992).
In the instant case, defendant did not show that its failure to pay weekly indemnity benefits for June 3, 2000 through June 15, 2000 and failure to reimburse claimant for Dr. Prats' evaluation, approve the third MRI, and authorize epidural steroid injections was reasonable. Therefore, defendant was properly assessed penalties in the maximum amount allowed by statute for its arbitrary refusal to pay the indemnity benefits and medical expenses. La. R.S. 23:1201(E). Accordingly, the penalty award of $2000.00 and the attorney fee award of $3000.00 are affirmed.

Plaintiff's Assignments of Error
First, Galeano argues that the decision by Judge Steib denying weekly indemnity disability benefits since July 29, 2000 is not supported by the law or evidence. The inquiry is whether the workers' compensation judge erred in concluding that Galeano did not meet her burden of proving disability beyond July 29, 2000.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations *479 of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State Through DOTD, 617 So.2d 880 (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
The workers' compensation judge was called upon to make credibility determinations and was influenced by certain medical findings in concluding that Galeano had suffered a work-related injury that resulted in her temporary disability from January 6, 2000 through July 29, 2000. This determination is supported by the record and we find no manifest error in that judgment.
Second, Galeano argues that the decision by Judge Steib refusing to award Galeano her weekly indemnity disability benefits for the period of June 3, 2000 through June 15, 2000 is not supported by the law or the evidence. We agree. Clearly, the workers' compensation judge ruled that Galeano was entitled to weekly indemnity benefits from the date of her accident until July 29, 2000. Thus, we conclude that Galeano is entitled to weekly indemnity benefits for June 3, 2000 through June 15, 2000.
Third, Galeano argues that the decision by Judge Steib should specifically award Galeano the medical treatment to which she is entitled, including, but not limited to, the MRI that was recommended by Dr. Russo and Dr. Prats, the epidural steroid injections recommended by Dr. Russo, and naming Dr. Prats as her neurosurgeon. The workers' compensation judge's Written Judgment states, "IT IS FURTHER ORDERED,[sic] that the claimant is entitled to the payment of all medical expenses, medication expenses and transportation expenses for the injury sustained on January 6, 2000." In her findings of fact in her subsequent Written Reasons for Judgment, the workers' compensation judge states, "Claimant is entitled to the payment of all medical bills, and medication expenses arising from the accident of January 6, 2000, in accordance with law. All medicals and medication expenses herein are reasonable, necessary, and compensable." [Emphasis added.] We affirm the workers' compensation judge's award of medicals and medication expenses.
Lastly, Galeano argues that the claimant should be awarded sanctions and attorney fees for each violation by the defendant. The assessment of attorney fees by a workers' compensation judge upon finding that the employer was arbitrary and capricious is largely a matter within the judge's wide discretion and will not be reversed on appeal absent a showing of abuse of that discretion. Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La.App. 2nd Cir.1984); Condall v. Avondale Shipyards, Inc., 436 So.2d 595 (La.App. 4th Cir.1983). Here, the workers' compensation judge assessed the maximum penalty allowed under the statute and reasonable attorney fees. We find no abuse in her vast discretion.
Conclusion
In sum, we affirm the workers' compensation judge's finding that Galeano was entitled to weekly indemnity benefits from *480 January 6, 2000 until July 29, 2000. Further, we affirm the workers' compensation judge's finding that "all medicals and medication expenses herein are reasonable, necessary, and compensable." We reverse the judgment to the extent that Galeano was not awarded payment of weekly indemnity benefits for June 3, 2000 through June 15, 2000.
We further find that Taco Bell is entitled to a credit under La. R.S. 23:1206 for overpayment of benefits from July 30, 2000 until May 24, 2001. We reverse the judgment to the extent that Taco Bell was not given a credit for this overpayment. The credit owed to Taco Bell should be sufficient to extinguish the debt owed by Taco Bell to Galeano for the weekly benefits it failed to pay her.
We also affirm the workers' compensation judge's finding that defendant was arbitrary in its refusal to pay weekly indemnity benefits from June 3, 2000 until June 15, 2000 and medical expenses. Accordingly, the penalty award of $2000.00 and the attorney fee award of $3000.00 are affirmed.
Finally, we affirm the workers' compensation judge's finding that Galeano's omissions were not willful misrepresentations designed to secure workers' compensation payments and, thus, forfeiture of benefits was not required. Costs of this appeal are assessed equally to both parties.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
EDWARDS, J., dissents in part.
EDWARDS, J., dissents in part.
As a threshold matter, it is my opinion that this court is obliged to undertake a de novo review of this record. The trial court determined that "All medical and medication expenses herein are reasonable, necessary and compensable" (emphasis supplied). Medical expenses requested in Galeano's claim included reimbursement of the evaluation performed by Dr. Prats in June 2001; approval of treatment recommended by Dr. Miranne; and approval for future epidural steroid injections by Dr. Russo. Records admitted without objection indicate that Galeano filled medications prescribed by Dr. Russo as late as October 2001, and consulted him in November 2001. If Galeano were eligible for benefits only until July 2000, the court erred in finding these medical expenses were necessary and compensable.
The findings of fact made by the trial court are irreconcilable. Under these circumstances, where there is manifest error of material fact made in the trial court, we are required to redetermine the facts de novo from the entire record and render a judgment on the merits. LeBlanc v. Stevenson 00-0157 (La.10/17/00), 770 So.2d 766; Hoffman v. East Jefferson General Hosp. 00-1216 (La.App. 5 cir. 12/13/00), 778 So.2d 33, citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). It further appears that in affirming the trial court's aware of all medical expenses, the majority's finding that Galeano was not entitled to benefits after July 2000 is problematic.
The majority concludes that the explanations made by Galeano, regarding her activities on the videotapes and her statements to her physicians, were not willful misrepresentations under La. R.S. 23:1208, and I concur with this assessment. However, I do not agree with the finding that Galeano was not entitled to benefits after July 29, 2000. The opinion states that the trial court was influenced in this determination "by certain medical findings." Other than the diminished protrusion of Galeano's lumbar disc, my review of the record disclosed no medical findings that support this conclusion.
*481 There is no question that the medical evidence in this case provided a definitive diagnosis of a herniated lumbar disc, and Taco Bell failed to show that this injury existed prior to the accident.
To the extent that the majority relies on the videotapes of July 29 2000 and September 27 2001, I believe such reliance is misplaced. The tapes of Galeano shopping or doing yard work do not reveal either the level of her discomfort or whether she had taken medication. None of these activities exceeded a half hour, a period that her physicians indicated as within her capabilities. Dr. Russo viewed the tapes, and although he agreed that Galeano could not bend over to the degree she exhibited in the films, he noted that she had (sometimes) bent her knees when doing so. He further indicated that Galeano still could not, in his opinion, do anything of that nature for more than one or two hours a day due to her disruptive protruding lumbar disc. He testified that it would not surprise him if one week, Galeano had restricted motion and could only bend over 50 degrees, and the next week she could bend over 90 degrees. According to her own testimony and that of the treating physicians, Galeano's injury did not absolutely prevent her from repetitive bending, squatting, etc. Rather, as was pointed out by both Drs. Miranne and Russo, her symptoms became worse upon increasing these activities. As of the time of trial, neither physician felt that she could tolerate such activity for eight hours. None of the treating or examining physicians have released Galeano to return to work.
In sum, there is no basis in the record on which to deny Galeano compensation after July 29 2000. For these reasons, I respectfully dissent from the findings that Galeano was not eligible for these benefits, and that Taco Bell is entitled to a credit for overpayment.