# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-398

CLIFTON MARICLE

VERSUS

SUNBELT BUILDERS, INC.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 03-05244,
HONORABLE JAMES L. BRADDOCK,
WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Glenn B. Gremillion, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

Eric Waltner
Allen & Gooch
P.O. Box 3768
Lafayette, LA 70502-3768
COUNSEL FOR DEFENDANTS/APPELLANTS:
      Sunbelt Builders, Inc. and Ohio Casualty Group

George A. Flournoy
Flournoy & Doggett
P.O. Box 1270
Alexandria, LA 71309-1270
COUNSEL FOR PLAINTIFF/APPELLEE:
      Clifton Maricle

**GENOVESE, Judge.**

In this workers' compensation case, the employee, his employer and its workers' compensation insurer seek review of a judgment on the issues of penalties and attorney fees under La.R.S. 23:1201. The employer and its insurer have appealed and the employee has answered the appeal. For the following reasons, we affirm in part, reverse in part, and render. We also award an additional $2,500.00 in attorney fees for work done on appeal.

## FACTS

Plaintiff, Clifton Maricle ("Maricle"), sustained a work related injury while employed with Defendant, Sunbelt Builder's, Inc. ("Sunbelt"), on July 11, 2002. Sunbelt's workers' compensation insurer, The Ohio Casualty Group, paid Maricle workers' compensation benefits. Maricle filed a disputed claim for compensation, commonly referred to as a 1008, alleging untimely payment of medical benefits, failure to provide medical treatment, and failure to timely pay indemnity benefits.

After trial on the merits, the workers' compensation judge ("WCJ") assessed the Defendants with six different penalties in the amount of $2,000.00 each for their: (1) failure to approve physical therapy; (2) failure to timely authorize surgery; (3) payment of indemnity benefits on a biweekly basis; (4) failure to pay the first week of indemnity benefits; (5) late payment of various installments of benefits; and (6) failure to timely reinstate indemnity benefits following surgery. The WCJ also assessed a $10,000.00 attorney fee, and awarded Maricle the first unpaid week of indemnity benefits. It is from these rulings that Defendants appeal.

Maricle filed an answer to the appeal asserting his entitlement to an increase in attorney fees as a result of the work necessitated by Defendants' appeal and by the

1

WCJ's refusal to award a separate attorney fee under La.R.S. 23:1201.2.[1] Maricle also claimed that he was entitled to an increase in penalties as a result of the Defendants' failure to timely pay medial expenses.

## ISSUES

The following issues are presented by Defendants for our review:

I. Whether the trial judge committed legal error or, in the alternative, manifest error in litigating extraneous issues;

II. Whether the trial judge committed legal error or, in the alternative, manifest error in concluding that there was a failure to approve the physical therapy recommended by Dr. DeLapp on September 24, 2002, and awarding penalties and attorney fees;

III. Whether the trial judge committed legal error or, in the alternative, manifest error in concluding that there was a failure to authorize the surgery on time and awarding penalties and attorney fees;

IV. Whether the trial judge committed legal error or, in the alternative, manifest error in awarding penalties and attorney fees in reference to the following: (1) the payment of indemnity benefits on a biweekly basis as opposed to a weekly basis; (2) the failure to pay the first week of indemnity benefits (December 7, 2002 to December 13, 2002); (3) the payment of various installments of benefits on a late basis, including the first installment of indemnity benefits that was never actually paid; and (4) the failure to timely reinstate indemnity benefits after the surgery was performed; and

V. Whether the trial judge committed legal error or, in the alternative, manifest error in awarding more than $8,000.00 in penalties, thereby disregarding the penalty cap.

Additionally, Maricle raises the following issues in his answer to appeal:

I. Whether he is entitled to an increase in the attorney fee award due to the work necessitated by the appeal.

_____

[1] Although the Answer to Appeal raises the issue of a separate attorney fee under La.R.S. 23:1201.2 (now repealed), Maricle failed to assign this issue as an error in the brief filed with this court. Therefore, this issue is not to be considered. Uniform Rules Court of Appeal - Rule 2-12.4.

II.   Whether the WCJ judge erred in denying his claims for penalties due to the untimely payment of medical expenses relating to treatment at the Lord Clinic and with Dr. Gunderson.

## LAW AND DISCUSSION

**Standard of Review**

The factual findings of the WCJ in a workers' compensation case are subject to a manifest error or clearly wrong standard of review. *George v. Guillory*, 00-591 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200. "In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one." *Id.* at 1206, quoting *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880 (La. 1993). Additionally, as recognized by this court in *Corbello v. Coastal Chemical Co., Inc.*, 02-1241, p. 3 (La.App. 3 Cir. 3/5/03), 839 So.2d 1152, 1154, *writ denied*, 03-0994 (La. 5/30/03), 845 So.2d 1051 quoting *Mitchell v. Brown Builders, Inc.*, 35,022, p. 8 (La.App. 2 Cir. 8/22/01), 793 So.2d 508, 515, *writ denied*, 01-2649 (La. 12/14/01), 804 So.2d 636:

> It is a well-settled legal principle that the factual findings in workers' compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence.

Finally, "[t]he determination of whether an employer should be cast with penalties and attorney fees is a question of fact which should not be reversed absent manifest error." *Sigler v. Rand*, 04-1138, pp. 10-11 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, 196, *writ denied*, 05-0278 (La. 4/1/05), 897 So.2d 611, citing *Romero v. Northrop-Grumman*, 01-24 (La.App. 3 Cir 5/30/01), 787 So.2d. 1149, *writ denied*,

3

01-1937 (La. 10/26/01), 799 So.2d 1144.

**Extraneous Issues**

Defendants contend that the WCJ erred in allowing Maricle to introduce evidence at trial that went beyond the scope of the pleadings. We disagree and affirm the ruling of the WCJ on this issue.

In his oral reasons for judgment, the WCJ explained his ruling on this issue. The court noted that "[a] review of the record and the 1008 dispute filed on behalf of Mr. Maricle discloses that all of the issues raised in the post-trial memorandum and with the introduction of evidence are contained in the issues presented in the 1008 filed on behalf of Mr. Maricle." This court has also reviewed the record of these proceedings, including the Plaintiff's disputed claim for compensation, and finds that the issues concerning penalties and attorney fees arising from allegations of nonpayment or incorrect payment of indemnity benefits, failure to authorize medical treatment, nonpayment or untimely payment of medical expenses are contained therein. Defendants were aware of these allegations which they denied in their answer. This court also notes that the pretrial statement filed on behalf of Defendants discusses the issues of penalties and attorney fees. The record further reveals that the WCJ identified these particular issues at the pretrial conference, the transcript of which is contained in the record of these proceedings. Therefore, we find no merit in Defendants' assertion that these were "last minute lagniappe" issues.

**Failure to Approve Physical Therapy**

Defendants contend that the WCJ erred in concluding that there was a failure to approve the physical therapy recommended by Dr. DeLapp on September 24, 2002, and awarding penalties and attorney fees. We disagree and find the following determination of the WCJ to be correct:

4

The records indicate that Dr. DeLapp [sic] recommended physical therapy for Mr. Maricle on September 24th of 2002. Mr. Maricle did not immediately cease his employment after his injury but continued to work for the employer. And on August 23rd of 2002, Dr. Delapp [sic], noted that Mr. Maricle indeed wanted to continue to work, and he did not want to undertake physical therapy at that time. Nevertheless, on return visit of September 24th of 2002, Dr. Delapp [sic] recommended physical therapy as well as a referral of Mr. Maricle to Dr. Velingker. Mr. Maricle testified at trial that he did not receive any physical therapy until the year of 2003.

Having reviewed the records introduced at trial, the WCJ was unable to find an authorization for physical therapy within sixty days of the recommendation for physical therapy made by Dr. Delapp on September 24, 2002. Louisiana Revised Statutes 23:1201(E) provides that medical benefits "shall be paid within sixty days after the employer or insurer receives written notice thereof." We do not find that the WCJ was manifestly erroneous in concluding that physical therapy was not timely authorized. Therefore, we affirm the imposition of the $2,000.00 penalty pursuant to La.R.S. 23:1201(F).

**Failure to Authorize Surgery**

Defendants assert that the WCJ erred in finding that there was a failure to timely authorize Maricle's cervical surgery. They contend that the appropriateness of the surgery was "reasonably controverted," and therefore, a penalty was not warranted.

La.R.S. 23:1201(F) sets forth the amount and manner in which penalties are to be assessed. "The sole exception to La.R.S. 23:1201(F) states '[t]his [s]ubsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.'" *Alexander v. Autozone, Inc.,* 04-871, pp. 13-14 (La.App. 3 Cir. 12/8/04), 889 So.2d 366, 376 (alteration in original); La.R.S. 23:1201(F)(2). This court discussed the issue of "reasonably controverted" in *Alexander,* 889 So.2d at 376, as follows:

5

The Louisiana supreme court has interpreted "reasonably controverted" to require that "the defendant . . . have some valid reason or evidence upon which to base his denial of benefits." *Brown v. Texas-LA Cartage, Inc.*, 98-1063 (La.12/1/98), 721 So.2d 885. The third circuit adopted this explanation *in Johnson v. Transamerican Waste Co.*, 99-190 (La.App. 3 Cir. 6/2/99), 741 So.2d 764. The claimant sought penalties for the failure of his employer to pay workers' compensation benefits. The employer asserted that it reasonably controverted the employee's claim to benefits, and the claimant was therefore not entitled to penalties. The third circuit stated that "[i]n order to avoid the imposition of penalties, an employer must reasonably controvert the workers' compensation claimant's right to benefits. The test to determine if the employer has fulfilled its duty is whether the employer or his insurer had sufficient factual and medical information presented by claimant." *Id*. at 770 . . . .

Thus, the critical focus in deciding to allocate penalties or attorney fees is whether the employer had an articulable, reasonable, and objective rationale for denying benefits sufficient to overcome the employee's claim to benefits. *Authement v. Shappert Eng'g*, 02-1631 (La.2/25/03), 840 So.2d 1181; *Galeano v. Taco Bell Corp.*, 02-904 (La.App. 5 Cir. 2/25/03), 839 So.2d 472.

In *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890, the supreme court stated:

[T]o determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

*See also Miller v. Christus St. Patrick Hosp.*, 03-1631, p. 7 (La.App. 3 Cir. 4/21/04), 872 So.2d 574, 579, *writ denied*, 04-1196 (La. 10/1/04), 883 So.2d 1010; *McCall v. Wal-Mart Stores, Inc.* 02-1343, p. 6 (La.App. 3 Cir 3/5/03), 846 So.2d 832, 836, *writs denied*, 03-1329, 03-1343 (La. 9/19/03), 853 So.2d 639, 641.

Therefore, to determine whether or not Maricle's need for surgery was "reasonably controverted" it is appropriate to consider, as the WCJ did, what information was possessed by the Defendants and when authorization was given. The WCJ conducted a thorough review of the record, including a substantial amount of

6

medical evidence, and gave an extensive and detailed recitation of the history of treatment. We accept the following findings of the WCJ:

> And the next issue is the untimely authorization of surgery. Mr. Maricle, on his own, after he had seen Dr. Delapp [sic], Dr. Velingker and Dr. Hajmurad, went to a Dr. Gunderson in Lake Charles . . . in May of 2003. And on June 5th of 2003, Dr. Gunderson recommended a cervical disc surgery for Mr. Maricle at the C6-C7 level. And the employer did not authorize this surgery until after Mr. Maricle had seen an independent medical examining doctor, Dr. Foster, in December of 2003 where upon Dr. Foster recommended the surgery and it was, apparently, immediately authorized once the employer received the report from Dr. Foster. So the question is whether there was an unreasonable delay between the request from Dr. Gunderson and the information that the employer had in its possession at the time. So we look at Dr. Davidson's records, an orthopaedist whom the employer had Mr. Maricle see, and he saw Mr. Maricle on February 5th of 2003. And Dr. Davidson noted that most of the attention had been drawn to Mr. Maricle's shoulder with little attention brought to his neck, so Dr. Davidson took some cervical X-rays and noticed some straightening of the normal cervical curvature. And he suggested that an MRI be undertaken which was undertaken and reviewed by Dr. Davidson and Dr. Hajmurad. The records reflect that after the request for the surgery was made by Dr. Gunderson the payor of benefits had a nurse case manager review information of Dr. Davidson and Dr. Hajmurad. There is contained in Dr. Davidson's records a letter dated August 15th of 2003 with -- with questions about Dr. Gunderson's recommendation of the anterial cervical disc fusion and they had Dr. Davidson review the MRI which had previously been undertaken. But I do note that in May of 2003, a myelogram and post-myelogram CT had been performed on Mr. Maricle, which no where in the records can I find that that information was provided to Dr. Davidson. When Dr. Davidson was asked on August 15th of 2003 if he felt the recommendation for an anterial -- anterior disc fusion at C6-7 was appropriate, his response was, it depended on neurological symptoms and he said, "Not at this times [sic] if Dr. Hajmurad's evaluation is accurate and current." And he deferred to other physicians who had more recently seen Mr. Maricle with regard to his ability to return to work. The employer also had in it's possession information from Dr. Hajmurad that indicted to the employer that Mr. Maricle had neck problems particular in a Physical Capacity Assessment Form signed by Dr. Hajmurad on April 30th of 2003. He noted that Mr. Maricle has spondylosis causing him to have neck pain. He said he could do some work but he needed to be careful. They have the possession -- in their possession the MRI study which noted at C6-7 moderate left neural formainal [sic] narrowing which was either secondary to a disc or spondylotic ridge. They had in their possession the myelogram studies because they showed those to Dr. Hajmurad, but they did not show those to Dr. Davidson. They indicated in correspondence that in as -- in early -- as June of 2003 they were

considering undertaking an IME but they did not undertake an IME request until November 7th of 2003. Based on the information that the Court finds the employer had available to it, I find that there was an inordinate or unreasonable delay in authorizing the surgery recommended by Dr. Gunderson.

In support of this conclusion, the WCJ further noted that:

Even Dr. Hajmurad who is not an orthopaedic surgeon nor a neurosurgeon who recommended against the surgery, recommended that the payor of benefits have Mr. Maricle seen by a neurosurgeon and he recommended to Dr. Nanda [sic] [Davidson], and he did this in the summer of 2003 and this referral was never made by the payor of benefits.

Based on our review of the record, we cannot say that the WCJ was manifestly erroneous in finding that Defendants did not reasonably controvert the claim. Accordingly, we affirm the penalty award in the amount of $2,000.00.

**Payment of Indemnity Benefits**

The next issue raised on appeal is the payment of indemnity benefits. It was the judgment of the WCJ that penalties were warranted for the failure on the part of Defendants: (1) to pay indemnity benefits on a weekly basis; (2) to pay claimant's first week of indemnity; (3) to pay various installments of benefits in a timely manner; and (4) to timely reinstate indemnity benefits after the surgery was performed. For the reasons set forth below, we find that the WCJ was not manifestly erroneous in assessing Defendants with a $2,000.00 penalty for each of the foregoing acts.

Weekly v. Biweekly Basis of Payment

Louisiana Revised Statute 23:1201 makes it clear that "[p]ayments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident . . . . " Thus, a claimant who is paid on a weekly basis is entitled to receive indemnity benefits the same way he receives his paycheck.

8

As noted by the WCJ, "Mr. Maricle testified, and his testimony is uncontradicted and confirmed the documentary evidence that he received his paycheck on a weekly basis from the employer and the records indicate, . . . that he was paid benefits on a two-week basis rather than a one-week basis." We agree with this conclusion of the WCJ; therefore, we affirm the award of penalties for the Defendants' failure to comply with La.R.S. 23:1201(A).

First Week of Indemnity Benefits

Maricle stopped working for Sunbelt on December 6, 2002. However, the WCJ found that "[t]he payor of benefits was aware of his lay off December 9th of 2002, and they did not commence paying him benefits until December 14th of 2002." Therefore, the WCJ concluded, and we agree, that Maricle was not paid indemnity benefits for the week of December 7, 2002 through December 13, 2002, to which he was clearly entitled. Therefore, we affirm the award for indemnity benefits for the week of December 7, 2002 through December 13, 2002, and we affirm the $2,000.00 penalty imposed on Defendants for their failure to pay Maricle his first week of indemnity benefits.

Timeliness of Indemnity Benefits

The initiation of indemnity benefits is governed by La.R.S. 23:1201(B) which provides that "[t]he first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid."

In the case of Maricle, the WCJ found that "despite the fact that Mr. Maricle had restrictions and that he was not working and that he was due his payment of first benefits 14 days after his last day of work, that these benefits were not paid timely."

9

To the contrary, he concluded that the evidence showed that several weeks of compensation were later paid in a lump sum amount.

The record reveals that the first payment of benefits was made to Maricle on January 24, 2003. However, pursuant to La.R.S. 23:2301(B) cited above, the first payment was due fourteen days after December 6, 2002, the last day that Maricle worked for Sunbelt. Since the first payment was not processed until January 24, 2003, it was late, as was the second payment, which was due on December 27, 2002. Given the untimely payment of these benefits, we affirm the imposition of the $2,000.00 penalty for the late payment of indemnity benefits.

Reinstatement of Benefits Following Surgery

Defendants also contend that the WCJ erred in awarding a $2,000.00 penalty to Maricle for the late reinstatement of benefits following surgery. We disagree.

The WCJ again provides a detailed overview of the treatment undergone by the claimant relative to this issue as follows:

> [T]he surgery was performed January 22nd of 2004. Benefits were not reinstated until March of 2004. The employer contends that it was not arbitrary and capricious in the termination of Mr. Maricle's benefits based on Dr. -- a release from Dr. Hajmurad for Mr. Maricle to return to work on April 3th of 2003. When Dr. Hajmurad released Mr. Maricle to return to work, the records indicate that he noted that Mr. Maricle had neck problems and that he was limited in what he could lift. This was confirmed by the [sic] Dr. Davidson, by Dr. Delapp [sic]. He noted the release was with restrictions in the document he signed on April 30th of 2003. Subsequent to that the employer had in its possession the records of Dr. Hajmurad on June 30th of 2003 after he had had a consult, apparently, with the case manager. He noted that he reviewed only the report of the myelogram and the post-myelogram CT scan. He never had saw [sic] the actual studies. He said he explained to the rehab nurse that the patient does have a problem and the best thing was to send him to a neurosurgeon, which the employer failed to do. So the employer, in this Court's view, arbitrarily and capriciously terminated the benefits of Mr. Maricle in April -- on April the 30th of 2003. . . . Based on that information as well as the recommendation for an anterial cervical disc fusion, the knowledge that the fusion surgery was performed in January of 2004, and the late reinstatement of benefits in March of 2004, the Court finds that the failure to timely reinstate Mr. Maricle's benefits was

10

unreasonable and I award a Two Thousand Dollar ($2,000.00) penalty.

After reviewing the record, this court does not find this conclusion of the WCJ to be manifestly erroneous or clearly wrong. Accordingly, the $2,000.00 penalty imposed for the Defendants failure to timely reinstate benefits is affirmed.

**Penalty Cap**

Defendants also assert on appeal that the WCJ erred in its award of penalties by disregarding the "penalty cap" of $8,000.00 set forth in La.R.S. 23:1201(F). We disagree.

Louisiana Revised Statute 23:1201(F) was amended by the legislature by 2003 La. Acts No. 1204, § 1, to expressly provide for multiple penalties and to place a cap on the amount of penalties which may be awarded at $8,000.000. The effective date of the legislative amendment was August 15, 2003. The events which occurred in this case giving rise to the imposition of penalties occurred prior to the amendment's August 15, 2003 effective date. Thus, whether or not the WCJ erred in awarding penalties in excess of $8,000.00 depends upon whether or not the 2003 amendment to La.R.S. 23:1201(F) is retroactive.

This court has not specifically addressed the issue of the retroactivity of the 2003 amendment to La.R.S. 23:1201(F) relating to the $8,000.00 "penalty cap." However, this court has previously held that the amendment to La.R.S. 23:1201(J), which applied to attorney fee awards, was substantive in nature and could not be given retroactive effect. *Smith v. Roy O. Martin Lumber Co.*, 03-1441 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, *writ denied*, 04-1311 (La. 9/24/04), 882 So.2d 1144. *See also Metoyer v. Roy O. Martin, Inc.*, 03-1540 (La.App. 3 Cir. 12/1/04), 895 So.2d 552, *on rehearing, writ denied*, 05-1027 (La. 6/3/05), 903 So.2d 467.

For the same reasons set forth in our prior decisions applying paragraph (J) of

11

La.R.S. 23:1201, we hold that the amendment to La.R.S. 23:1201(F), providing for an award of multiple penalties subject to an $8,000.00 cap, is a change in the law and must be given substantive effect. Louisiana Civil Code Article 6 provides that substantive laws apply prospectively only and cannot be given retroactive effect in the absence of contrary legislative expression. Since the cap on the amount of penalties which may be awarded was not in existence when the actions occurred in the present case, we find that the WCJ did not err in awarding penalties in excess of $8,000.00.

**Employee's Attorney Fees**

In his answer to appeal, Maricle contends that he is entitled to an increase in the attorney fee award due to the work necessitated by the appeal. Considering the record of these proceedings, the issues presented on appeal and the additional work required on appeal, this court finds that an increase in the award for attorney fees in warranted. We, therefore, render judgment in favor of Maricle and against Defendants in the amount of $2,500.00 in attorney fees for work necessitated by the present appeal.

**Penalties for Untimely Payment of Medical Expenses**

Also in his answer to appeal, Maricle seeks a reversal of the judgment of the WCJ denying his claims for penalties due to the untimely payment of medical expenses relating to treatment at the Lord Clinic and with Dr. Gunderson. On this issue, we affirm in part, reverse in part, and render.

The WCJ correctly noted that Maricle had the burden of proving that the bills relating to his treatment at the Lord Clinic and with Dr. Gunderson were received by Defendants, relying on *Daugherty v. Domino's Pizza,* 95-1394 (La. 5/21/96), 674 So.2d 947, and *Newson v. Richard Spurgeon Masonry*, 03-1367 (La.App. 3 Cir.

3/3/04), 867 So.2d 78, *writ denied*, 04-0839 (La. 5/14/04), 872 So.2d 523. Having reviewed the record, this court finds that the record is devoid of evidence that the Defendants received the medical bills from the Lord Clinic. Although a printout of medical expenses incurred at the Lord Clinic was introduced into evidence which shows the dates of Maricle's treatment, and the date that certain statements were sent out, there is insufficient evidence in the record to prove that those statements were sent to the Defendants, or that said statements were ever received by them as required by La.R.S. 23:2301(E). We, therefore, affirm the judgment of the WCJ denying penalties and attorney fees for the alleged untimely payment of bills relating to Maricle's treatment at the Lord Clinic.

However, a Health Insurance Claim Form was introduced at trial evidencing treatment by Maricle with Dr. Gunderson on August 14, 2003. This document clearly contains a stamp thereon showing "OCG CLAIMS" dated August 29, 2003. We find that this evidence is sufficient to prove that the medical bill for treatment by Maricle with Dr. Gunderson on August 14, 2003 was received by the insurer. Pursuant to La.R.S. 23:1201(E), payment was required to have been made within sixty days of receipt of written notice, which the Defendants failed to do. The patient financial history, which was introduced along with Dr. Gunderson's records, shows that the first payment made on the account after receipt of the Health Insurance Claim Form by Ohio Casualty was on January 2, 2004. We find that the WCJ erred in concluding that Maricle failed to meet his burden of proving that payment of the medical bill relating to his treatment with Dr. Gunderson was untimely. We, therefore, reverse that portion of the judgment and render a $2,000.00 penalty award in favor of Maricle. No additional attorney fee is awarded herein as this court finds the $10,000.00 attorney fee awarded by the WCJ to be sufficient.

13

## **DECREE**

For the foregoing reasons, we reverse the judgment of the WCJ on the issue of the untimely payment of medical expenses for treatment by Maricle with Dr. Gunderson and award a $2,000.00 penalty in favor of Maricle and against Sunbelt and Ohio Casualty. Additionally, we render judgment in favor of Maricle and against Sunbelt and Ohio Casualty in the amount of $2,500.00 for attorney fees necessitated by the present appeal. The judgment is affirmed in all other respects.

Costs of this appeal are assessed against Defendants/Appellants.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**