# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-510

PATRICK JACK

VERSUS

UNION TANK CAR COMPANY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF EVANGELINE, NO. 13-07567
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Elizabeth A. Pickett, and John E. Conery, Judges.

**AFFIRMED.**

**Jonathan J. Rabalais**
**Janice B. Unland**
**Rudolph C. Boeneke**
**Rabalais Unland**
**1404 Greengate Drive, Suite 110**
**Covington, LA 70433-5272**
**(985) 893-9900**
**COUNSEL FOR DEFENDANT-APPELLANT:**
        **Union Tank Car Company**

**Harry K. Burdette**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
     **Patrick Jack**

**PICKETT, Judge.**

The employer in this workers' compensation matter appealed the claimant's award of supplemental earnings benefits (SEBs). The claimant answered the appeal, arguing his employer's actions warrant an award of penalties and attorney fees. We affirm.

## FACTS

On February 28, 2011, Patrick Jack was injured in the course and scope of his employment with Union Tank Car Company when he fell on his back while carrying a ladder and a bag of tools. His injuries caused him to suffer low back pain and pain in his left leg. He initially received temporary total disability benefits. In February 2012, after his treating physician found him to be able to perform light-duty work, Mr. Jack returned to work at Union Tank in the position of security gate guard, a sedentary position. Mr. Jack made three attempts to return to work in that position but ultimately quit the position because he could not tolerate the pain he suffered when working. He filed a claim against Union Tank for benefits, penalties, and attorney fees.

Mr. Jack's claim presented the issues of whether he could work in the security gate guard position, whether he is entitled to supplemental earnings benefits (SEBs) for the periods September 24, 2014 through January 6, 2014, and February 7, 2015 through March 11, 2015, and whether Union Tank's development of the position and procurement of his physician's approval for him to work in that position entitle him to an award of penalties and attorney fees.

The matter was tried before the workers' compensation judge (WCJ) on June 4, 2015. Mr. Jack argued at trial that he could not perform the job of security gate guard because the job caused him substantial pain. He also asserted that the job

was "sham" employment and that Union Tank's representative, James Vidrine, Jr., intentionally misrepresented the security gate guard job description to his treating physician and the physician who performed two independent medical examinations [IME] on him in order to have them approve the job and defeat his claim for benefits. Union Tank argued that Mr. Jack failed to present evidence sufficient to prove those claims.

The WCJ issued written Reasons for Judgment and a Judgment on January 25, 2016, awarding Mr. Jack SEBs for the periods of time at issue but denying his claims for penalties and attorney fees. In her Reasons for Judgment, the WCJ reviewed the testimony offered by the parties concerning the circumstances surrounding Mr. Jack's attempts to return to work as a security gate guard and the medical evidence. Finding the WCJ correctly set forth the pertinent facts established by the record, we quote from the Reasons for Judgment (exhibit references omitted):

> Mr. Jack's symptoms were not initially impressive. He was seen on the date of the accident at Mercy Regional Medical Center and excused from work until March 1, to follow up with his family doctor. He then treated with Dr. Henry J. Dupre who noted Mr. Jack was improving but still had decreased range of motion and lumbar muscle spasms. Dr. Dupre sent Mr. Jack for physical therapy and kept him on a no-work status. He began treatment with Dr. Ray Williams, an orthopedic surgeon, in May of 2011[,] and Dr. Williams continues to be his treating physician. Dr. Williams initially treated Mr. Jack conservatively, with continued physical therapy and lumbar epidural injections. He approved of an attempt to return to work in early 2012[,] but when the low back and left leg pain continued and conservative measures brought only minimal relief, Dr. Williams recommended surgery. Surgery was denied until early 2015. It was performed on or about March 11, 2015. Two more return to work attempts were made before the surgery was performed. It is those two attempts that form the basis of the dispute.
>
> The job Mr. Jack returned to each time was a Security Gate Guard. Essentially Mr. Jack was to be at the entrance gate and check-in visitors and direct them if necessary.

The first return to work attempt appears to have been from early February to early March 2012. In his progress note of March 6, 2012, Dr. Williams indicated that Mr. Jack was still having low back and left leg pain and, as conservative measures brought no lasting relief, he recommended surgery. Dr. Williams took him off work and recommended updated testing. Benefits appear to have been reinstated without any problems at this time.

Mr. Jack attempted the modified job again beginning August 15, 2013. Based on Dr. Williams' records, Mr. Jack had recently undergone a Functional Capacity Evaluation which indicated he was fit for light duty. Dr. Williams was requesting a repeat Lumbar Epidural Steroid Injection and a repeat MRI. Also, in the August 7, 2013 progress note, Dr. Williams noted increasing problems in the left leg resulting in falls and a reported increase in muscle spasms. In his note of September 24, 2013, Dr. Williams noted increasing pain, falls[,] and muscle spasm, and placed Mr. Jack on no-work status. Indemnity benefits were not reinstated.

Mr. Jack again attempted the modified job from January 6 through February 6, 2014. Dr. Williams prescribed a more comfortable chair, which was not provided. As of February 6, Dr. Williams stated Mr. Jack was unable to work, pending treatment. In his note of February 26[,] Dr. Williams noted increasing left leg pain with exacerbation of left groin pain and requested EMG/NCV testing. That testing was positive for radiculopathy. Indemnity benefits were not reinstated until nearly a year later, after surgery had been performed.

One of Mr. Jack's contentions is that the job provided was a "sham" job. The court disagrees that the job was a "sham." However, the court does believe that Mr. James Vidrine, the Union Tank representative in charge of Mr. Jack's return to work made no effort to make the job at all comfortable for Mr. Jack. While initially, a "shack" was provided as some protection from the elements, the shack was gone by the 2014 return to work attempt. Every time Mr. Jack attempted the job, he was provided with a metal folding chair to sit upon. Also, though the job description refers to communication via 2-way radio and/or cell phone, Mr. Jack was not allowed to use a radio, cell phone[,] or bring a book. He was told to go to the back building to use the restroom rather than the much closer front building, and he was given little protection from the extreme cold, heat or rain. The evidence reflects that a number of Jack's co-workers were willing to go on record decrying Jack's working conditions, and indeed it seems that it would be common sense that a metal folding chair would be quite uncomfortable for a gentleman with low back and radiating leg pain; however, the consistent response of Mr. Vidrine was to make vague commitments to "look into it" then do nothing. The court is of the opinion that while there are some discrepancies between the job description and the implementation, those discrepancies alone are not sufficient to make the job unsuitable or inappropriate.

While much of the argument, testimony[,] and evidence focused on Mr. Jack's working conditions, Mr. Jack himself appeared more focused on his inability to get comfortable and distract himself from his discomfort. He was unable to tolerate the job due to his increasing pain and limited positional options. The metal chair posed a definite challenge as did the fact that he was not able to lie down occasionally as needed.

The WCJ awarded Mr. Jack's SEB claim but denied his claims for penalties and attorney fees. Union Tank appealed the WCJ's judgment in favor of Mr. Jack, and Mr. Jack answered the appeal.

## UNION TANK'S ASSIGNMENTS OF ERROR

Union Tank asserts the WCJ committed the following errors in rendering judgment:

1. The workers' compensation judge erred in finding that Patrick Jack carried his clear and convincing burden of proof in establishing that he was unable to work due to "substantial pain[."]

2. The workers' compensation judge erred in finding that Patrick Jack was entitled to [SEBs] during the time period in dispute (September 24, 2013-January 6, 2014, and from February 7, 2014-March 11, 2015).

## MR. JACK'S ASSIGNMENTS OF ERROR

Mr. Jack assigns three errors with the WCJ's judgment:

1. The Trial Court erred in not finding the job offered to claimant was "sham" employment.

2. The Trial Court erred in not finding the employer in violation of La.R.S. 23:1208 for intentionally misrepresenting a job description to the treating physician and IME in an effort to deny benefits.

3. The Trial Court erred in not assessing penalties and attorney fees.

## DISCUSSION

### *Did the WCJ Err in Awarding Mr. Jack SEBs under the Substantial Pain Doctrine?*

Union Tank's assignments of error are intertwined, and we will address them together. The WCJ concluded that Mr. Jack proved he is entitled to SEBs

under the substantial pain provision of La.R.S. 23:1221(3)(c)(ii). Pursuant to La.R.S. 23:1221(3)(a), an employee is entitled to SEBs if he sustains a work-related injury resulting in an inability to earn ninety percent or more of his average pre-injury wage. An employee seeking SEBs must prove, by a preponderance of the evidence, that his injury resulted in his not being able to earn that amount. *Clay v. Our Lady of Lourdes Reg'l Med. Ctr.*, 11-1797 (La. 5/8/12); 93 So.3d 536. If the claimant proves he cannot earn ninety percent of his average pre-injury wage, the burden shifts to the employer to "prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region." *Id.* at 539. If the employer satisfies its burden, the employee must then prove, by clear and convincing evidence, that he is unable to perform the duties of the available job solely as a consequence of substantial pain. La.R.S. 23:1221(3)(c)(ii).

In *Thomas v. Lafayette Parish School System*, 14-732, p. 4 (La.App. 3 Cir. 12/10/14), 158 So.3d 67, 70, this court outlined what must be proved under the clear and convincing burden of proof:

> "Clear and convincing evidence requires the employee 'demonstrate that the existence of a disputed fact is highly probable [or] much more probable than its nonexistence.'" *Alexander v. Autozone, Inc.*, 04–871, p. 6 (La.App 3 Cir. 12/8/04), 889 So.2d 366, 371. In order to satisfy this burden, a claimant may use medical and lay testimony. *Kepco Operating, Inc. v. Eubanks*, 10–1166 (La.App. 3 Cir. 3/9/11), 58 So.3d 1047, *writ denied*, 11–0705 (La.6/3/11), 63 So.3d 1017. Medical evidence used to meet the burden of proof must be objective and testify to the "medical condition, symptoms, pain, and treatment." *Alexander*, 889 So.2d at 371.

Factual findings in workers' compensation cases are subject to the manifest error rule. *Buxton v. Iowa Police Dep't*, 09-520 (La. 10/20/09), 23 So.3d 275. Under the manifest error rule, a reviewing court does not decide whether the fact

finder was right or wrong, but whether its findings are reasonable. *Id.* Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

The WCJ addressed Mr. Jack's claim for benefits by carefully reviewing the medical and factual evidence as follows:

> Mr. Jack was released to work light or sedentary duty by his treating physician on multiple occasions. He underwent an FCE which was "positive" for light duty, per the treating physician. For both of the periods at issue, he was able to perform the job for 4-6 weeks. . . . . [T]he court believes that Mr. Jack has established entitlement to wage benefits under La.R.S. 23:1221(3), and particularly 23:1221(3)([c])(ii), the "substantial pain" provision in the [SEBs] category of benefits.
>
> . . . .
>
> Mr. Jack met his initial burden of proving that the injury resulted in his inability to earn 90% or more of his pre-injury wage. He was taken off work completely, then released to sedentary to light duty which was incompatible with his job of injury. The burden then shifted to the employer, Union Tank, to prove that Mr. Jack was physically able to perform a certain job and that the job was offered or available to Mr. Jack. The court finds that Union Tank met this burden with the Guard Shack job as it was approved by his treating physician and fell within the restrictions of the Functional Capacity Evaluations. The burden therefore shifts back to Mr. Jack to establish by clear and convincing evidence that he is unable to perform the employment.
>
> In connection with the analysis of the issue, the court believes it important to note that Mr. Jack's injury and physical condition deteriorated over time from an objective standpoint. His initial MRI was reported on April 25, 2011 as mild annular bulging at L3-L4, mild to moderate bulging with a small central disc protrusion at L4-L5 and minimal annular bulging at L5-S1. A year later, the MRI report of March 12, 2012 noted a "broad-based disc bulge with a moderate sized central disc protrusion and annular fissure at the L4-5 level effacing the ventral thecal sac with mild to moderate central spinal canal stenosis. **This appears to have slightly progressed over the interval.**" ([E]mphasis mine.) The MRI report of November 22, 2013 notes a "broad-based disc bulge with a small central disc protrusion and annular fissure at the L4-5 level with disc material approximating the exiting L4 nerve roots. This is slightly more prominent paracentrally to the left."
>
> In addition to the increasingly abnormal diagnostic testing, the objective findings on physical exam corroborated his increasing low back pain and radicular leg pain during the periods he performed the

job. His doctor took him off work due to these increased findings. The second return to work attempt began after a July 9, 2013 release by Dr. Williams. In his progress note of that date, Dr. Williams states that a recent Functional Capacity Evaluation was "positive" for light duty and Mr. Jack may return to light duty. At the next visit, on August 7, 2013, Dr. Williams notes "new complaints of increasing neurological deficits in left legs resulting in falls..." There was also a reported increase in muscle spasm. Then, in his note of September 24, 2013, Dr. Williams notes increasing pain, falls[,] and muscle spasms and issues a "no work" slip. Mr. Jack stopped working[,] but his benefits were not reinstated. He therefore tried the job again. During this attempt, he tried to get a more comfortable chair. Dr. Williams' PA wrote a note on January 16, 2014, stating "He will need to be accommodated with a swivel chair with cushion and high back." Mr. Jack was unable to perform the job and was taken off work by Dr. Williams on February 6, 2014[,] commensurate with the positive EMG/NCV. Therefore, while Dr. Williams felt Mr. Jack could attempt the sedentary job, it was objectively demonstrated each time that Mr. Jack's symptoms increased.

In addition to the increased objective findings, the court also finds that Mr. Jack is extremely credible. He answered all questions directly and sincerely, not attempting to invoke the sympathy of his audience through exaggeration of his complaints. While he did not minimize or downplay the weather issues or the fact that he was required to walk a longer distance to the restroom, neither did he focus on those matters when describing his problems with the job. Rather, his testimony indicated that the discomfort of the chair provided to him combined with the inability to lay down when necessary and the inability to distract himself with a telephone or reading materials all led to increasing pain and increased awareness of his pain. His subjective complaints were corroborated by the increasing abnormalities on his diagnostic testing, ultimately leading to the approval of surgery. Mr. Jack appeared to be a conscientious man and attempted the job on three occasions. His complaints and examinations consistently passed all validity checks, with minimal to no Waddell's signs found and consistently valid Functional Capacity Evaluations. The deteriorating objective diagnostics and positive validity checks are consistent with the WCJ's favorable impression of Mr. Jack's credibility. The court has no doubts that Mr. Jack was consistently truthful in his testimony. This weighs greatly in his favor in the evaluation of the evidence.

His credibility, his diagnostic testing[,] and the opinion of his treating physician provide clear and convincing evidence that he could not perform the job due to his increasing symptoms. Therefore, the court finds that Mr. Jack is entitled to [SEBs] under the provisions of LSA-R.S. 23:1221(3)(b)(ii).

Union Tank argues that Mr. Jack did not carry his burden of proof because he submitted only his personal lay testimony to support his claim that he could not perform the security gate guard duties. Union Tank bases this argument on *Alexander*, 889 So.2d 366, in which another panel of this court held that expert testimony is required to satisfy the clear and convincing burden of proof.

Union Tank's argument is completely at odds with *Thomas*, 158 So.3d 67, where the author of *Alexander*, 889 So.2d 366, writing for the panel, held that the claimant's medical records provided the expert testimony required to satisfy his burden of proof, and *Perot v. Natchitoches Parish Hospital*, 94-258, p. 6 (La.App. 3 Cir. 10/5/94), 643 So.2d 378, 381, where another panel of this court affirmed the WCJ's findings that were based on the claimant's testimony and his medical records, because the WCJ's findings were "based largely on expert testimony."

In this case, neither physician testified at trial; however, their records evidence that Mr. Jack could not perform the security gate guard duties. Dr. Williams' records show that he found Mr. Jack's complaints that he could not perform the job to be valid and instructed him to cease work the three times Mr. Jack attempted the security gate guard position. The objective testing Dr. Williams ordered also substantiates Mr. Jack's complaints. Pursuant to *Thomas*, 158 So.3d 67, *Alexander*, 889 So.2d 366, and *Perot*, 643 So.2d 378, we find no error with the WCJ's conclusion that Mr. Jack proved his claim by clear and convincing evidence.

Union Tank next argues that because Dr. Clark Gunderson, an orthopedic surgeon who performed the two IMEs on Mr. Jack, opined that Mr. Jack could return to the security gate guard position, Mr. Jack failed to carry his burden of proof. In April 2014, Dr. Gunderson recommended surgery for Mr. Jack, observing, "this patient has now been symptomatic for 3 years and has attempted to do everything that has been asked of him. He has tried to go back to work and

8

has been unable to perform gainful employment." Dr. Gunderson then noted that if Mr. Jack did not have surgery, he could return to the security gate guard position. We find that this latter statement does not negate Dr. Gunderson's opinion that Mr. Jack needed surgery and that Mr. Jack is "unable to perform gainful employment." It simply recognizes that only Mr. Jack could determine whether he had to have the surgery performed or whether he could continue to live with the pain and limitations caused by his back injury.

Union Tank also contends that the WCJ's findings in this matter "miss the mark" as her holding in *Carmouche v. Kraft Foods, Inc.*, 10-401, p. 5 (La.App. 3 Cir. 4/13/11), 62 So.3d 889, 892, *writ denied*, 11-930 (La. 6/17/11), 63 So.3d 1044, was held to "miss the mark." The parties stipulated in *Carmouche* that the claimant was entitled to SEBs, yet the WCJ awarded the claimant temporary total disability benefits. This court reversed the WCJ's determination that the claimant proved she was entitled to temporary total disability benefits due to the substantial pain doctrine because the substantial pain doctrine applies only to SEB claims, not to temporary total disability benefits. Although the panel in *Carmouche* reversed the award of temporary total disability benefits, it properly converted the award to SEBs. Thus, the WCJ did not miss the mark; she properly applied the substantial pain doctrine to Mr. Jack's claim for SEBs as the panel did in *Carmouche*.

Union Tank also argues that the WCJ's award in favor of Mr. Jack is wrong because he proved only that he could not perform the job because he was bored, not because it caused him substantial pain. We find no error with the WCJ's conclusion that Mr. Jack's job duties combined with the conditions under which he had to work and the length of his workday caused him substantial pain. Mr. Jack explained that the metal folding chair provided to him caused an increase in his back pain and his left leg pain. He also testified that he brought his own chair and

9

a cushion in an attempt to relieve the pain cause by the metal chair, but they provided little relief. Mr. Jack further testified that because he had to wear steel-toed boots and walk on the graveled, uneven surface of the Union Tank facility, walking increased, rather than alleviated his pain. As noted by the WCJ, he was required to traverse the graveled, uneven surface to use the restroom and to retrieve his lunch or snacks during his breaks. Mr. Jack related that he sought to relieve his pain at work by performing stretches recommended by his physical therapist. He explained, however, that he had to perform the stretches while leaning against a wall, and Mr. Vidrine denied his request to lean against the exterior wall of a building near his work station to do so.

Lastly, Union Tank argues that Mr. Jack established by his own testimony that he could perform the job duties of the security gate guard. Mr. Jack testified that he fished and hunted, helped coach his children's athletic teams, and engaged in activities with his children during the time claimed that he could not work in the security gate guard position. Mr. Jack explained that he engaged in those activities when he felt good and that when he did so, he could rest or perform stretches recommended by his physical therapist to relieve any pain the activities may have caused. His testimony further established that he did not perform these activities every day or for eight hours at a time. Rather, he performed them when his pain levels allowed him to do so, and he stretched or rested as needed to relieve the pain.

Finding no basis to discount the WCJ's credibility determinations and other findings of fact, we affirm Mr. Jack's award of SEBs for the periods September 24, 2013 to January 6, 2014, and February 7, 2015 to March 11, 2015, based on his inability to perform the security gate guard job duties due to substantial pain.

10

***Did the WCJ Err in Denying Mr. Jack's Claim for Penalties and Attorney Fees?***

Mr. Jack argues the WCJ erred in not awarding him penalties and attorney fees. He contends that the security gate guard job Union Tank provided him was a "sham" and that Mr. Vidrine intentionally submitted a false job description to Drs. Williams and Gunderson for the purpose of denying him indemnity benefits in violation of La.R.S. 23:1208 and that these actions warrant an award of penalties and attorney fees.

The WCJ's decision to award penalties and attorney fees is a question of fact which is reviewed under the manifest error standard of review. *Gibson v. Resin Systems, Inc.*, 15-299 (La.App. 3 Cir. 10/7/15), 175 So.3d 1141. The WCJ did not award penalties and attorney fees because "the issue ultimately came down to a credibility determination." When discussing Mr. Jack's claims that the job was a sham and that Mr. Vidrine intentionally submitted a false job description to Drs. Williams and Gunderson, the WCJ concluded that there were some discrepancies between the job description and the manner in which the job was implemented but ultimately decided that the discrepancies did not make the job unsuitable or inappropriate.

We have reviewed the record and find no basis to overrule the WCJ's conclusion on this issue. Although the security gate guard position was never implemented at Union Tank's Ville Plate facility before or after Mr. Jack's attempts to return to work, the position is included in jobs provided by Union Tank in its corporate employment handbook. The WCJ questioned why Union Tank did not anticipate that having to sit on a metal folding chair would increase Mr. Jack's back pain but concluded the evidence did not rise to the level warranting an award of penalties and attorney fees. Furthermore, there is no evidence that Mr. Vidrine should have anticipated that walking in steel-toed boots on the uneven, graveled

11

surface of the Union Tank facility would exacerbate Mr. Jack's pain. Our review of the record does not show this conclusion is manifestly erroneous. Accordingly, we affirm the denial of penalties and attorney fees.

## DISPOSITION

The judgment of the workers' compensation judge awarding Patrick Jack supplemental earning benefits September 24, 2014 through January 6, 2014 and February 7, 2015 through March 11, 2015 and denying Patrick Jack's claim for penalties and attorney fees is affirmed. All costs are assessed against Union Tank Car Company.

**AFFIRMED.**